JACKOWICZ v. KNOBLOCH.

PHYSICIANS AND SURGEONS—MALPRACTICE—CONFINEMENT AND CHILD-BIRTH.

> In action against physician for alleged malpractice in attending plaintiff during confinement and childbirth, and which resulted in birth of child which did not survive, evidence that result could or would have been otherwise if defendant had been in personal attendance immediately preceding childbirth instead of causing her to be placed under the care of other skilled persons *held*, insufficient to take case to jury.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 8, 1936. (Docket No. 10, Calendar No. 38,534.) Decided March 3, 1936.

Case by Frances Jackowicz against Edmund J. Knobloch for malpractice. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Riseman & Lemke,* for plaintiff.

*Douglas, Barbour, Desenberg & Purdy,* for defendant.

NORTH, C. J. Defendant, a practicing physician in Detroit, was engaged to attend plaintiff during the latter portion of pregnancy and approaching childbirth. Prior to confinement plaintiff had a hemorrhage. About three weeks later (September 10, 1933) plaintiff suffered another hemorrhage. Defendant was called and he came to see plaintiff at her residence about 1:30 in the afternoon. The patient continued to lose blood and suffer pain; and

defendant was called again about midnight and he again attended plaintiff. The doctor was called again by plaintiff's husband shortly before 8 o'clock on the morning of the 11th. He arrived promptly at plaintiff's home. She was still bleeding badly and in severe pain. The doctor telephoned Providence Hospital, arranged for an ambulance and about 9 a. m. plaintiff was removed to the hospital. She was accompanied by her husband. The doctor did not go at once to the hospital; but as soon as plaintiff arrived she was cared for by hospital nurses who "gave her pills, injection and so on." At the hospital Dr. Foster attended the patient. Plaintiff's husband and others made repeated attempts by telephone to again summon Dr. Knobloch to attend plaintiff who was still bleeding and in great pain. The doctor could not be located and did not appear at the hospital until about 3 p. m. In the meantime a priest was called and last rites administered to plaintiff. Also a Dr. Henderson, evidently by direction of the hospital authorities, attended plaintiff. Two blood transfusions were resorted to. The patient gave birth to a child that did not survive. There is some uncertainty in the testimony as to whether Dr. Knobloch arrived at the hospital just before or after the birth of the child. Plaintiff remained at the hospital about 10 days, which was approximately the same length of time she had remained following each of two previous confinements.

In this suit plaintiff seeks to recover damages on the ground that defendant through neglect and carelessness was guilty of a breach of his professional duty to plaintiff as a patient. Defendant's professional duty is alleged in the declaration as follows:

"That it was the duty of the defendant to accompany plaintiff to the hospital; to be with her during the time she was in labor and to give her such treatment as would stop the flow of blood; to be with her when she delivered her child; and to give her such treatment as would insure the delivery of a live child.

"That it was the duty of the defendant to give her the proper, the usual and customary treatment necessary in confinement cases and especially where the confinement is accompanied by a great loss of blood."

The resultant damages for which plaintiff seeks recovery are that she suffered intense pain and still suffers and will hereafter throughout her life suffer intense pain, especially in the region of the abdomen, and will suffer from headaches; and because plaintiff gave birth to a dead child which caused her "great mental and physical anguish."

At the close of plaintiff's proofs defendant moved for a directed verdict, assigning as reasons:

"That there is no medical testimony in this case to show that anything the doctor did or omitted to do was not in accordance with the usual and ordinary practice.

"There is no showing that because the doctor failed to do something he should have done, or that he did something he should not have done, that this result probably followed—that is, the death of the child, and the pain that she suffered."

The motion to direct a verdict was granted and plaintiff has appealed. We think the ruling of the trial judge was necessitated by the record. We pass consideration of plaintiff's contention that she was legally entitled to the personal attendance and care of defendant as the physician who had been en-

gaged; and that in this particular she made a *prima facie* case notwithstanding no witness was sworn who was qualified to testify as an expert. The record as made by plaintiff discloses that through defendant's arrangement for her removal to the hospital she received professional care and attention; and there is no competent testimony that defendant's failure to attend plaintiff in person resulted in her suffering any greater pain than she otherwise would have suffered, or that the unfortunate outcome of her confinement was caused thereby. Much is said by plaintiff's counsel about her excessive loss of blood, but the record is barren of competent testimony to sustain plaintiff's assumption that the defendant by proper care could have and should have caused cessation of plaintiff's hemorrhages. In short there is no testimony tending to show that plaintiff would have suffered less or escaped any of the elements of damage for which she seeks recovery had defendant attended her in person during the interval he was absent instead of causing her to be placed under the care of other skilled persons.

Plaintiff failed to make a case by competent testimony; and the verdict for defendant was properly directed. The judgment entered thereon is affirmed. Costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.